In re Kenneth R. CIRILLI, Debtor.

Carol A. Cirilli, Plaintiff,

v.

Kenneth R. Cirilli, Defendant.

Bankruptcy No. 00–53735 JDW.
Adversary No. 00–5156.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

July 13, 2001.

248

Kirby R. Moore, Macon, GA, for Plaintiff.

Nikitis Zoumberis, Warner Robins, GA, for Debtor.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on a complaint filed by Carol Cirilli ("Plaintiff") against Kenneth Cirilli ("Debtor") in which Plaintiff objects to the discharge of Debtor's debts pursuant to 11 U.S.C. § 523. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I).

The Court held a trial on May 16, 2001. After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Plaintiff and Debtor were married for eighteen years and had two children together. However, in August of 1999, Plaintiff filed for divorce. Debtor then moved into the home of Ms. Kathy Bennett. The divorce could not be settled amicably, so Plaintiff and Debtor went to state court for relief. A jury trial was held in the Superior Court of Houston County, Georgia, and on September 7, 2000, the jury presented its verdict.

The jury found that Debtor's gross income was $63,000 a year and Plaintiff's gross income was $24,000 a year. The jury then divided the marital property such that Plaintiff was awarded the marital home, household furnishings, a stereo, and an automobile. Debtor was awarded two automobiles, savings bonds, guns, some household appliances, sports equipment, a television, and some household items. As for the couple's marital debts, the jury ordered Debtor to pay 70% of the $825 house payment for nine years, 70% of Plaintiff's $475 car payment, 70% of the $480 payment on the SunMark debt, and $350 of the $700 balance on the couple's Wachovia charge card. Plaintiff was ordered to pay the remainder on each of the debts. In addition, Debtor was ordered to pay $678.46 in child support for each child monthly, until each child reaches the age of eighteen.

Subsequently, Debtor filed for Chapter 7 bankruptcy relief on September 29, 2000. His income had not changed significantly since the jury verdict, however some of his expenses had changed. Debtor made two significant purchases, a four-wheel recreational vehicle, after the couple separated, and a tractor, after the couple had divorced. In filing for bankruptcy, Debtor requested all of his marital debts be discharged, reaffirmed his tractor debt, and eventually transferred ownership of the four-wheel vehicle to his living companion one month prior to the trial in this case.

Plaintiff filed an objection to the discharge of Debtor's four marital debts by way of a complaint with this Court. Eventually, Plaintiff abandoned her objection as to the car payment marital debt since the car had to be surrendered to the creditor, yet still objects to the discharge of the other three marital debts. At the time of trial, Debtor's net monthly income was approximately $3,604, his reasonable

monthly expenses were approximately $690, and his monthly divorce related expenses were approximately $2,614. Debtor's divorce related expenses included $200 more in child support expenses due to Debtor having fallen behind in his support payments. However, the arrearage is set to be caught up within eight months. Plaintiff's net monthly income, including the support payments she was receiving from Debtor at the time of trial, was $3,552 and Plaintiff's monthly expenses for herself and the two children, including her share of the three divorce related debts, was between $2,732 and $2,775. The couple's children were seventeen and twelve years old respectively at the time of trial.

### Conclusions of Law

Section 727 of the Bankruptcy Code provides that a debtor may obtain a discharge of his debts that arose prior to his filing for bankruptcy. However, there are a number of exceptions to this provision of general discharge, particularly when the debt has arisen in the context of a divorce. Section 523 of the Bankruptcy Code addresses these exceptions and states in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

. . . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(West 1994).

■■■ The burden of proving an exception to discharge under Section 523 is on the creditor and requires a court to construe an exception strictly against the creditor, so that the debtor may have a fresh start. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Where the exception involves domestic relations, a bankruptcy court should construe the exception more liberally. *Smith v. Smith (In re Smith)*, 218 B.R. 254, 258 (Bankr.S.D.Ga.1997).

Plaintiff claims that the monthly house payment is a nondischargeable debt under Section 523(a)(5) because it is a domestic obligation in the nature of support. Plain-

tiff also claims that the monthly payment owed to SunMark Bank and the one time payment of $350 owed to Wachovia Bank are nondischargeable debts under Section 523(a)(15) because they are debts arising from a divorce, which Debtor is able to pay, or which, if discharged, would not be more beneficial to Debtor than detrimental to Plaintiff. The Court will address each of these claims in turn.

### Section 523(a)(5)

■ Under Section 523(a)(5), "a given domestic obligation is not dischargeable if it is actually in the nature of alimony, maintenance, or support." *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001)(quoting *In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985)). Federal law controls the determination of whether an obligation is in the nature of support, and a federal court should engage in a simple inquiry as to whether an obligation can legitimately be characterized as such. *Cummings*, 244 F.3d at 1265. However, in making this inquiry, a court should look to state law for guidance and in particular, should look to the intent of the state court, where the state court has created the domestic obligation. *Id.* This is because whether the obligation was intended to function as support at the time it was created is the determining factor in whether a debt is in the nature of support. *Id.*

■ Here, by jury verdict in the Superior Court of Houston County, Georgia, entered on September 7, 2000, Debtor was ordered to pay 70% of the monthly house payment for the home in which Plaintiff and their children resided for nine years, as part of their divorce. Plaintiff and Debtor's youngest child was approximately ten years old at the time the verdict was entered. As such, the child will be finishing high school in eight or nine years time. The Court does not find this to be a mere

coincidence. In fact, it seems clear to the Court that the jury intended the house payment to be in the nature of support for the children. The payments are to cease when the youngest child reaches majority and finishes her education. The payments would ensure that the children would have a home until they are capable of caring for themselves. Accordingly, the Court finds the house payment obligation to be a nondischargeable domestic obligation in the nature of support under Section 523(a)(5).

### Section 523(a)(15)

■ Plaintiff also claims that two other debts, to SunMark Bank and to Wachovia Bank, are nondischargeable under Section 523(a)(15). Section 523(a)(15) operates to address those debts that arise from a divorce which do not fall under the exception of Section 523(a)(5). Under this subsection, a prima facie case for the nondischargeability of a debt is made by the non-debtor spouse when that spouse demonstrates that the debt arose from a divorce agreement, separation agreement, or decree. *Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394, 397 (Bankr. N.D.Ga.1996). Upon making this demonstration, the burden of going forward shifts to the debtor to either rebut the evidence presented by the non-debtor spouse or make a demonstration that the debt falls under one of the exceptions to Section 523(a)(15). *Smith*, 218 B.R. at 258. However, the ultimate burden of establishing that the debt is nondischargeable is on the non-debtor spouse at all times. *Id.*

■ The two exceptions under Section 523(a)(15) that would allow a debtor to discharge his obligation, despite the fact that it arose in the context of a divorce, are where the debtor cannot pay the debt due to other reasonably necessary expenses or where the benefit to Debtor of

discharging the debt outweighs the detriment to Plaintiff of the consequences of discharge. In assessing whether either of these exceptions apply, a court should consider the circumstances of the debtor and the non-debtor spouse at the time of the bankruptcy trial as the relevant time period. *Id.* Because neither party has disputed that the debt owed to SunMark Bank and the debt owed to Wachovia Bank are debts that arose out of a divorce, the Court will move to addressing whether either of the two exceptions of Section 523(a)(15) apply to these debts.

 Under Section 523(a)(15)(A), a debtor must show that he is unable to pay his debts that have arisen from a divorce because of other reasonably necessary expenses to have his debts discharged. Both of the bankruptcy courts in the Northern and Southern Districts of Georgia have adopted a four-factor test for determining a debtor's ability to pay. *Smith*, 218 B.R. at 259; *Humiston v. Huddelston (In re Huddelston)*, 194 B.R. 681, 688 (Bankr. N.D.Ga.1996). This Court adopts that test. The four factors are: (1) the disposable income of the debtor at the time of trial; (2) the presence of more lucrative employment opportunities; (3) any relief of debt expected in the short term; and (4) the extent to which the debtor has made a good faith attempt to obtain employment to satisfy the debt. *Id.*

 Debtor stated that if he is forced to pay all three of the debts that Plaintiff is requesting this Court to find nondischargeable, he will not have any disposable income. After paying income taxes, child support, medical insurance, and the three debts at issue, Debtor stated at trial that he would have approximately $662 left with which to pay his own expenses. In addition, there was no evidence presented that Debtor has any more lucrative employment opportunities available to him. Accordingly, it would appear that Debtor is unable to pay the two remaining debts.

However, evidence presented shows that Debtor does not have as many expenses as he claims and has more income than he reports. The $300 that Debtor listed in his bankruptcy schedules as rent each month, is actually paid to Debtor's companion and is paid only when Debtor is able. The $500 in food expenses that Debtor listed in his schedules as having each month, appears to be $300. Furthermore, the $300 tax obligation that Debtor listed in his bankruptcy schedules is unsubstantiated. Because Debtor has not filed his tax return for the previous year, Debtor cannot prove and has not persuasively estimated the amount of the obligation. As a result, Debtor's actual personal expenses after the discharge of his other debts, appears to be approximately $1050 each month.

As to Debtor's income, discrepancies appear in the income and tax figures Debtor provided through exhibits and oral representations to the Court. Debtor's bankruptcy schedules indicate that Debtor has a gross monthly income of approximately $4,853 and monthly taxes of approximately $1,520. Def. Ex. # 3. At trial, Debtor indicated that his monthly taxes were approximately $1,495. However, Debtor's Wage and Tax Statements indicate a gross monthly income of approximately $5,257 and monthly taxes of approximately $1,237. Def. Ex. # 1-2. These discrepancies indicate that Debtor has more income at his disposal than he has represented to the Court. Debtor is currently able to pay his expenses as well as the two remaining divorce related obligations.

In addition, Debtor will be relieved of half of his child support obligation in May of 2002 and will be relieved of the arrearage on his child support obligation within

eight months, thereby increasing the amount of income available to him by approximately $878. Therefore, within one year, Debtor will not only be able to pay his expenses and both of his divorce related obligations, but will also be able to enjoy a significant increase in the amount of his disposable income each month.

As to other factors that the Court should consider in determining a Debtor's ability to pay, the Court finds that Debtor has not made a good faith effort to obtain employment to satisfy the debts. Debtor's sudden urge to begin farming after his divorce, expending significant sums of money to start this endeavor, and expending money to continue the endeavor even after seeking bankruptcy relief when Debtor had little training and had never farmed before, does not demonstrate good faith to this Court.

The Court will not consider Debtor's tractor payment of $360 each month in evaluating whether Debtor is able to pay the two remaining divorce related obligations. In addition, the fact that Debtor decided to purchase a four-wheel recreational vehicle after he had separated from Plaintiff but prior to his filing for bankruptcy, coupled with the fact that he continued to own the vehicle until just prior to this trial, demonstrates that Debtor has not made a good faith effort to pay his debts. Such behavior at best indicates to the Court that Debtor did not feel that he was under any financial strain. At worst, the behavior indicates to the Court that Debtor was attempting to avoid payment of his divorce related debts by expending his funds and continuing to pay his new debts, instead of his divorce related obligations.

Taking all factors into consideration, Debtor has a monthly net income of ap-proximately $3,604, monthly personal expenses of approximately $690, and monthly divorce related expenses of approximately $2,614. This leaves Debtor with approximately $300 each month of disposable income until May 2002, when Debtor's monthly disposable income will increase to $1178. Accordingly, the Court finds that Debtor has the ability to pay the two debts at issue and that Debtor has not met the first exception, Section 523(a)(15)(A).

 The second exception, Section 523(a)(15)(B), requires an assessment of the benefit to Debtor if the two debts are discharged as compared to the detriment to Plaintiff if the debts are discharged. If the benefit outweighs the detriment then the divorce related debts should be discharged. 11 U.S.C. § 523(a)(15)(B). To make this assessment, courts should consider the totality of the circumstances surrounding the debt and the overall equities called for in the case. *Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394, 400 (Bankr.N.D.Ga.1996). Specifically, courts should examine factors such as the income and expenses of each party, the nature of the debt, and the non-debtor spouse's ability to pay the debt. *See e.g., Humiston*, 194 B.R. at 689; *Cleveland*, 198 B.R. at 400.

 The Court has discussed in detail the income and expenses of Debtor. Debtor's net monthly income is approximately $3,604 and his expenses including his personal expenses and the debts at issue in this case are approximately $3,304. Plaintiff's net monthly income currently is approximately $3,552, with $1,996 of that total coming from her personal income and $1,556 coming from child support. Plaintiff's monthly expenses, including her share of the three debts at issue, appear to be between $2,732 and $2,775.[1] This

1. Plaintiff submitted a list of expenditures into evidence that stated Plaintiff had monthly ex-

leaves Plaintiff with between $820 and $863 of disposable income each month as compared to the $300 of disposable income that Debtor is left with each month if the two debts are not discharged.

As to the nature of the debt, both debts are bank debts resulting from credit card charges. Neither party disputes that they are both liable for the debts and that they both created to the indebtedness.

However, it is in the Court's examination of Plaintiff's ability to pay the two debts that the Court finds that the benefit to Debtor of discharge is outweighed by the detriment to Plaintiff. If Plaintiff is forced to pay both bank debts in their entirety, Plaintiff's current monthly expenses will become at best approximately $3,111, with her income remaining at $3,552. While this does not appear to be terribly detrimental to Plaintiff, the detriment becomes clear when the fact that Plaintiff will lose approximately $878 each month of income in May 2002, is taken into consideration. Specifically, Plaintiff will lose approximately $200 in income from back child support, and approximately $678 in income from child support for her oldest child who will be eighteen years old in May. Projecting Plaintiff's income and expenses for one year from now, Plaintiff will have a monthly income of approximately $2,674 and monthly expenses of $3,111, if the two debts are discharged. Therefore without a determination that the two debts are nondischargeable, in one year, Plaintiff will be unable to meet her monthly obligations. Conversely, Debtor is able to pay the two debts currently and in May of 2002, he will have approximately $1178 of disposable income each month.

Considering the balance of hardship, it appears that the SunMark debt and the Wachovia debt should be determined to be nondischargeable. Accordingly, the Court finds that Debtor has not met the second exception, Section 523(a)(15)(B).

In summary, the house payment is deemed to be support under Section 523(a)(5). Further, Debtor has failed to satisfy either exception to Section 523(a)(15) as to the SunMark and Wachovia debts. Therefore, all three debts are determined to be nondischargeable. The debt for the car payment having been abandoned by Plaintiff as an issue in these proceedings will be determined to be dischargeable.

An order in accordance with this opinion will be entered on this date.

---

penses of approximately $3,165.55. Pl.Ex. #4. This expense figure included the entire house payment as an expense and did not include her share of the SunMark Debt as an expense. In addition, the Court cannot deter-

mine whether Plaintiff included the Wachovia Bank debt under her credit card expense or not, so the calculation of Plaintiff's monthly expenses in this order is provided by a range to account for either possibility.