In re Charles Edward PERKINS, Debtor.

**Kathy Sue PERKINS, Plaintiff,**

v.

**Charles Edward PERKINS, Defendant.**

**Bankruptcy No. 97–3067.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Jan. 14, 1998.

Alan J. Lehenbauer, Swanton, OH, for plaintiff.

Charles Edward Perkins, Toledo, OH, pro se.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Trial upon Plaintiff's Complaint to Determine Dischargeability of Debts Pursuant to 11 U.S.C. Section 523. At the Trial, the parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider in reaching its decision. The Court has reviewed the evidence, arguments of the parties, and the entire record in the case. Based upon that review, and for the following reasons, the Court finds that Defendant's obligation to hold Plaintiff harmless on the mutual debts at issue is nondischargeable to the extent referred to in this Opinion.

### FACTS

On May 14, 1996, Plaintiff and Defendant ended their marriage of approximately twenty-one years through an agreed Judgment Entry of Divorce entered in the Court of Common Pleas of Sandusky, Ohio. Two children were born as issue of this marriage, one of whom was a minor at the time of the divorce as well as at the time of the trial of this matter. At the time of the divorce, the couple also owned a rental property. The Judgment Entry of Divorce provided that the Plaintiff would quit claim her interest in property located on Erie Street in Toledo, Ohio. The Entry also provided that the Defendant would hold the Plaintiff harmless on various mutual debts. It is the dischargeability of Defendant's obligation to hold the Plaintiff harmless on these debts that is at issue herein. These debts and their approximate balances are as follows:

| | |
|---|---|
| First Federal | $11,800.00 |
| AT & T | 3,000.00 |
| National City | 3,200.00 |
| MBNA | 5,000.00 |
| Nation's Bank | 5,000.00 |
| Total | $28,000.00 |

The Defendant was able to sell the Erie Street property in September of 1996, shortly before filing bankruptcy in November of 1996. He sold the property, which he had purchased for Fifteen Thousand Dollars ($15,000.00), for Five Thousand Dollars ($5,000.00), netting Four Thousand Eight Hundred Eighteen and 10/100 Dollars ($4,818.10) cash from the sale. Defendant did not use a significant amount of the proceeds, if any, to pay down the mutual debts with Plaintiff.

Prior to the parties' divorce, it appears that the Defendant attempted to own and operate a bar, as well as various rental properties, during the years of 1995 and 1996. His income through these years was quite low. However, in 1994 Defendant had earned approximately Thirty-one Thousand Dollars ($1,890.00) as income from his job alone. Defendant has presently returned to this position. Defendant now claims to have a net income per month (after taxes and health insurance) of One Thousand Eight Hundred Ninety Dollars ($1,890.00) per month. This Court finds, in this case, the following to be a list of Defendant's current expenses that are reasonably necessary to be expended for the maintenance or support of Defendant or his dependant:

| | |
|---|---|
| Rent or mortgage payment | $ 335.00 |
| Utilities (gas, electric, phone, etc.) | 160.00 |
| Home maintenance | 50.00 |
| Clothing | 50.00 |
| Laundry and dry cleaning | 25.00 |
| Medical and dental expenses | 25.00 |
| Auto gas | 50.00 |
| Recreation | 50.00 |
| Auto insurance | 110.00 |
| Life insurance | 25.00 |
| IRS settlement | 100.00 |
| Car payment | 195.00 |
| Child Support | 270.00 |
| Total monthly expenses | $1,445.00 |

The Debtor also claims a Two Hundred Dollars ($200.00) monthly expense to his parents for loans they made to him for his bar venture, and a Twenty-five Dollar ($25.00) expense to J.C. Penney. These were prepetition debts, however, that should have been listed on the Defendant's schedules. Bankruptcy schedules are to be accurate, not just a statement of the debts a debtor wishes to discharge. This Court does

not consider these debts as expenses for purposes of determining his ability to repay a property settlement under § 523(a)(15). Section 523(a)(15)(A) clearly provides that the expenses to be considered must be "reasonably necessary to be expended for the maintenance and support of the debtor or a dependant of the debtor." Though there is certainly nothing wrong with a debtor voluntarily repaying prepetition debts which have or could have been discharged, such payments do not rise to the level of expenses which are reasonably necessary to be expended for maintenance and support. Defendant also claims to spend monies "helping out" his emancipated son with whom he presently resides. While this may or may not be a noble gesture, it is also not reasonably necessary.

Thus, according to these figures, the Defendant's monthly income exceeds his monthly expenses by Four Hundred Forty-five Dollars ($445.00). This Court is also aware that the Defendant's One Hundred Dollar ($100.00) payments to the IRS are on a Twelve Hundred Dollar ($1,200.00) debt, and will thus be paid off relatively shortly. The Plaintiff, on the other hand, is presently earning considerably less than the Defendant. She presently grosses Nineteen Thousand Dollars ($19,000.00) from her employment, plus the Two Hundred Seventy Dollar ($270.00) monthly child support payments the Defendant pays her.

### LAW

The Bankruptcy Code, 11 U.S.C. § 523, et al., provides, in pertinent part:

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or

property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

### DISCUSSION

The issue to be resolved herein is whether the Defendant may discharge his obligation to hold Plaintiff harmless on the mutual debts of their marriage. Determinations concerning the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(i). Thus, this case is a core proceeding.

Though Plaintiff brings this action under sections 523(a)(5) and 523(a)(15) of the Bankruptcy Code, this Court finds that the debt at issue falls squarely under the provisions of § 523(a)(15). Section 523(a)(15) was enacted as part of the Bankruptcy Reform Act of 1994, and applies to bankruptcy cases filed after October 22, 1994. *In re Woodworth*, 187 B.R. 174, 175 (Bankr.N.D.Ohio 1995). Section 523(a)(15) provides that debts incurred in a divorce proceeding are now generally nondischargeable in bankruptcy, unless at least one of two exceptions apply. *In re Patterson*, 1997 WL 745501 (6th Cir.). See eg. *Macy v. Macy*, 114 F.3d 1, 3 (1st Cir.1997); *In re Kritt*, 190 B.R. 382, 385 n. 4 (9th Cir. BAP 1995). The first exception is that the debtor does not have the ability to repay the debt. 11 U.S.C. § 523(a)(15)(A). The second exception is that the benefit of discharge to the debtor would outweigh the detrimental consequences to the spouse, former spouse, or child of the debtor. 11 U.S.C. § 523(a)(15)(B).

The spouse, former spouse, or child of the debtor bears the initial burden of establishing that the debt is not a debt which is nondischargeable under § 523(a)(5), and that the debt was incurred by the debtor in the course of a divorce or separation, or in connection with a separation agreement, divorce decree or other order of a court of record. *In re Henderson*, 200 B.R. 322, 324 (Bankr.N.D.Ohio 1996); *In re Smither*, 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). Upon such a showing by the objecting creditor, the burden of proof then shifts to the debtor to establish either an inability to pay under § 523(a)(15)(A), *or* that a discharge would result in a benefit to the debtor that would outweigh the detriment to the plaintiff under § 523(a)(15)(B). *Henderson* at 324; *Smither* at 107; *In re Carroll*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995).

The Plaintiff has shown that the debt at issue herein is not nondischargeable pursuant to § 523(a)(5), as the debt is not in the nature of alimony, maintenance or support. The hold harmless obligation appears to have been undertaken by the Defendant out of fairness that he should pay the debts associated with his business ventures. Accordingly, he was also allowed to keep the rental property he still owned. Further, the debt was incurred in connection with a separation agreement. Therefore, the burden shifts to the Defendant to prove his right to discharge this debt under § 523(a)(15).

This Court must first determine whether the debtor has the ability to repay the debt pursuant to § 523(a)(15)(A). The Defendant's financial condition at the time of trial should be the starting point for making this determination. *Henderson*, 200 B.R. at 326; *Carroll*, 187 B.R. at 200; *Smither*, 194 B.R. at 108 (A court may consider facts and circumstances concerning a debtor's future earning potential, as well as his or her income as of the date of the trial in determining his or her ability to pay). If the debtor does not have the ability to repay the debt, this ends the matter and the debt is discharged under § 523(a)(15)(A). Even if the debtor does have the ability to repay the debt, the debtor could still obtain a discharge under § 523(a)(15)(B), if discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the debtor's former spouse or children.

In this case, Defendant has excess income over expenses in the amount of Four Hundred and Forty-five Dollars ($445.00) per month. However, a court should also consider the amount of the debt involved in determining whether a debtor has the ability to repay it. *In re Smither*, 194 B.R. 102, 108 (Bankr.W.D.Ky.1996). In this case the debt, approximately Twenty-eight Thousand Dollars ($28,000.00) plus interest which may accrue, is quite large. This Court is also aware of the danger of dedicating all "excess income," as unexpected expenses, such as car repairs, will frequently arise.

It has been held that under § 523(a)(15) a debt may be partially discharged according to the facts of the particular case, just as with determinations of dischargeability of student loan debts under § 523(a)(8). *Smither* at 109–110, following *In re Comisky*, 183 B.R. 883, 884 (Bankr. N.D.Cal.1995). This Court finds this practice equitable and pragmatic, and will adopt such a rule. However, before proceeding to

a partial repayment analysis, this Court should first determine whether the Defendant can have the debt discharged in full under § 523(a)(15)(B). *Id.* Accordingly, this Court must proceed to a balancing of hardships.

It is clear from the language of the statute that when determining whether a debt is nondischargeable under § 523(a)(15)(B), a court must compare the standard of living of the debtor against the standard of living of his former spouse and/or children to determine whether the debtor will "suffer more" by not receiving a discharge of the debts in question. *Smither*, 194 B.R. at 110, citing *In re Phillips*, 187 B.R. 363 (Bankr.M.D.Fla.1995). "[T]he best way to apply the 11 U.S.C. § 523(a)(15)(B) balancing test is to review the financial status of the debtor and the creditor and compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the spouse, former spouse and/or children would suffer as a result of the debtor's discharge." 194 B.R. at 111.

In this case the Court does not find that the Defendant has met his burden of showing that he is entitled to a discharge under § 523(a)(15)(B). Plaintiff's income, even considering the child support payment income, is substantially less than Defendant's. Plaintiff's gross income, including child support payments, totals approximately Twenty-two Thousand Two Hundred Forty Dollars ($22,240.00) per year, while Defendant's gross income potential is approximately Thirty-one Thousand Dollars ($31,000.00) per year.

However, the Defendant clearly does not have the ability to pay the present judgment all at once. Thus, we return the partial repayment analysis as affecting Defendant's ability to repay under § 523(a)(15)(A). See *Smither* at 109. In determining a partial repayment amount, this Court must also be careful not to reduce the debtor's standard of living substantially below that of the plaintiff, as doing so would violate the purposes of § 523(a)(15).

Considering the factors above as well as the Debtor's income and expenses, this Court finds that the Defendant shall hold Plaintiff harmless on the mutual debts to the extent of Three Hundred Dollars ($300.00) per month until his settlement with the IRS is paid, then Four Hundred Dollars ($400.00) per month for the remainder of five years from the date the first payment was made in accordance with this Opinion. Payments shall begin after the first of the month after the date this Opinion is issued, and shall be paid by the due date provided for the minimum payments on these various debts. Payments shall be made pro rata directly to the creditors, and shall terminate to the extent that for any reason Plaintiff's obligation to repay these debts terminates. Defendant may also choose to make a single payment directly to Plaintiff on the fifteenth day of every month. The entire balance of the debts at issue will become immediately due and payable if Defendant fails to make any of these payments.

Accordingly, it is

***ORDERED*** that the Defendant's obligation to hold Plaintiff harmless on the debts at issue be, and is hereby, determined *NON-DISCHARGEABLE* to the extent that Defendant shall hold Plaintiff harmless on the mutual debts to the extent of Three Hundred Dollars ($300.00) per month until his settlement with the IRS is paid, then Four Hundred Dollars ($400.00) per month for the remainder of five years from the date the first payment was made in accordance with this Opinion. Payments shall begin after the first of the month after the date this Opinion is issued, and shall be paid by the due date provided for the minimum payments on these various debts. Payments shall be made pro rata directly to the creditors, and shall terminate to the extent that for any reason Plaintiff's obligation to repay these debts terminates. Defendant may also choose to make a single payment directly to Plaintiff on the fifteenth day of every month. The entire balance of the debts at issue will become immediately due and payable if Defendant fails to make any of these payments.