**In re Douglas KOENIG, Debtor.**

**Barbara Koenig, Plaintiff,**

v.

**Douglas Koenig, Defendant.**

**Nos. 99–3002, 98–33923.**

United States Bankruptcy Court, N.D. Ohio.

May 29, 2001.

Maria Santo, Lima, OH, for plaintiff.

Jeffrey G. Williams, Lima, OH, for defendant.

### *DECISION AND ORDER*

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of a marital debt. At the Trial, it was established that the debt at issue arose under the following circumstances:

The Plaintiff, Barbara Koenig, and the Defendant, Douglas Koenig, are former husband and wife. During their marriage to one another, the couple lived in a home owned by the Plaintiff. Home Savings and Loan Association (hereinafter "Home Savings") held the original mortgage on this property in the amount of approximately Thirty Thousand dollars ($30,000.00). In September of 1993, approximately six (6) months after the couple's marriage began, the Plaintiff and the Defendant refinanced their home with Home Savings for Forty-five Thousand dollars ($45,000.00), and used the excess money to pay-off the Defendant's car, buy grave plots, and make a few home repairs. In January of 1997, the couple applied for and received a variable rate second mortgage from Minster State Bank (Account Number 11–006043–4) in the amount of Fifty-one Thousand dollars ($51,000.00). The terms of this loan provided that the Parties would make monthly payments of Three Hundred Sixty-eight and 63/100 dollars ($368.63) for the first twelve (12) months, followed by monthly payments of Four Hundred Thirteen and 77/100 dollars ($413.77) for the remaining twenty-four (24) years. The monies received in this transaction were used to pay credit card debts and other marital obligations.

On April 20, 1998, the Plaintiff and the Defendant divorced. Pursuant to a separation agreement signed by both parties in April of 1998, the Plaintiff agreed to assume the Parties' first mortgage payment, while the Defendant agreed to assume the Parties' second mortgage payment to Home Savings and Loan Association. Payments on the second mortgage for June and July of that year were made from the proceeds of the couple's joint federal income tax refund. However, following these initial payments, the Defendant, contrary to the Parties' separation agreement, made no further payments on the account. As a consequence, the Plaintiff made those payments not made by the Defendant, and subsequently has continued to make all payments on this debt.

On September 4, 1998, the Defendant, after first consulting with his attorney in July of 1998, filed a petition for in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, on January 22, 1999, this Court entered an order discharging the Defendant from all his dischargeable debts. (The Plaintiff was not listed as a creditor in the Defendant's bankruptcy .) Before this event took place, however, the Plaintiff filed a timely complaint seeking to have the Defendant's debt to Minster State Bank held nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

## LAW

### 11 U.S.C. § 523(a)(15). Exceptions to Discharge

Section 523(a)(15) of the Bankruptcy Code provides:

A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a government unit unless—

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

### LEGAL DISCUSSION

Proceedings brought pursuant to § 523(a)(15) are core proceedings over which this Court has subject matter jurisdiction. 28 U.S.C. § 157(b)(2)(I).

■ The Plaintiff has brought her Complaint to determine dischargeability under § 523(a)(15). This section provides that those debts which arise from a former marital relationship, and which are not otherwise provided for in § 523(a)(5), are nondischargeable debts in bankruptcy. For purposes of this section, the creditor/spouse bears the initial burden of establishing that the debt at issue was incurred by the debtor in the course of a divorce or separation, or in connection with a separation agreement or divorce decree or other order of a court of record. *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *In re Smither*, 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). However, upon the creditor/spouse meeting this requirement, the burden then shifts to the debtor to establish either an inability to pay, or that a discharge would result in a benefit to the debtor which would outweigh the detrimental consequences to the creditor/spouse. *Melton v. Melton (In re Melton)*, 228 B.R. 641, 645 (Bankr. N.D.Ohio 1998). With respect to this burden of proof allocation, the Parties do not dispute the fact that the Defendant's obligation to pay the Minster State Bank arose from a separation agreement; thus it is the Defendant's burden to prove, by a preponderance of the evidence, that one of the two exceptions to nondischargeability contained in § 523(a)(15) are applicable. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard used in dischargeability proceedings). In this regards, the Court begins its analysis by examining the Defendant's compliance with the first exception to discharge noted in § 523(a)(15)(A); that is, whether the Defendant has the "ability to pay" the debt.

■ Under the "ability to pay" test contained in § 523(a)(15)(A), a court must first determine the amount of disposable income, if any, the debtor has available to pay the marital debt. *Barnes v. Barnes (In re Barnes)*, 218 B.R. 409, 411 (Bankr. S.D.Ohio 1998). In making this determination, this Court has applied the defini-

tion of "disposable income" as set forth in 11 U.S.C. § 1325(b)(2) which provides that "disposable income" is that "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor ... [.]" *Miller v. Miller (In re Miller)*, 247 B.R. 412, 415 n. 1 (Bankr.N.D.Ohio 2000); *see also Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 142 (9th Cir. BAP 1997.); *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 304 (Bankr.D.R.I.1996). In conducting this calculation, a debtor's income and expenses are generally gauged from the time the trial is conducted; although if the circumstances of the particular case so warrant, the Court may consider a debtor's future earning potential. *Newcomb v. Miley (In re Miley)*, 228 B.R. 651, 655 (Bankr.N.D.Ohio 1998). For purposes of applying this test to the case sub judice, the following evidence was presented to the Court:

In this case, the Defendant, who is forty-seven (47) years of age and remarried, testified that he works forty (40) hours per week with no overtime at an hourly rate of Sixteen and 56/100 dollars ($16.56) per hour, or Two Thousand One Hundred Nine and 56/100 dollars ($2109.56) per month after standard payroll deductions. His wife is currently unable to work outside the home due to health problems, but has in the past and may in the future be able to contribute to their marital income. On the other side of the equation, the Court, after evaluating the evidence produced at Trial, finds that the reasonable monthly expenses of the Defendant are as follows:

| | |
|---|---:|
| Home mortgage plus utilities | $ 670.00 |
| Home maintenance | 40.00 |
| Food | 230.00 |
| Clothing | 50.00 |
| Medical and dental | 95.00 |
| Entertainment | 50.00 |
| Car insurance | 80.00 |
| Car payment | 150.00 |
| Credit card payments | 45.00 |
| Total monthly expenses | $1,410.00 |

Thus, for purposes of the "disposable income" prong of the "ability to pay" analysis, the Court finds that the Defendant has a "disposable income" of approximately Seven Hundred dollars ($700.00) per month.

■ The Court's analysis, however, for purpose of the "ability to pay" test does not end there. Instead, after determining a debtor's disposable income, a court must next determine, after considering the total amount of indebtedness involved, whether the debtor has a sufficient amount of "disposable income" available to pay the marital debt within a reasonable amount of time. *Crossett v. Windom (In re Windom)*, 207 B.R. 1017, 1022 (Bankr. W.D.Tenn.1997). In making this determination, this Court in the past has warned against dedicating all of the debtor's disposable income to repayment of the marital debt, as unexpected expenses, such as car repairs, may arise. *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190 (Bankr. N.D.Ohio 1998).

■ Upon applying the above criteria to the case sub judice, the Court cannot find that the Defendant has met his burden under subparagraph (A) of § 523(a)(15). Specifically, the Court notes that the Defendant, having a disposable income of Seven Hundred dollars ($700.00) per month, would be able to repay his marital debt to the Plaintiff in Eight and one-half (8 1/2) years at a rate of Five hundred dollars ($500.00) per month, thus allowing the Defendant an additional Two Hundred dollars ($200.00) per month for unexpected expenses. Accordingly, as the Defendant has the ability to pay the marital debt under § 523(a)(15)(A), the Court will now proceed to examine the Defendant's qualification for a discharge under subparagraph (B) of § 523(a)(15).

Section 523(a)(15)(B) provides that a debtor/spouse is entitled to receive a discharge of a marital debt if discharging the debt would result in a benefit to the debtor which outweighs the detrimental consequences to the debtor's former spouse or children. In past instances, this Court has held that the best way to apply this statutory balancing test is for a court to review the financial status of the debtor and the creditor, and then to compare their relative standards of living to determine the true benefit of the debtor's possible discharge against the hardship the creditor would suffer as a result of the debtor's discharge. *Perkins v. Perkins (In re Perkins),* 221 B.R. 186, 191 (Bankr. N.D.Ohio 1998).

For purposes of this test, the Court has already established that the Defendant's "take home" pay is Two Thousand One Hundred Nine and 56/100 dollars ($2,109.56), of which approximately Seven Hundred dollars ($700.00) is available as disposable income. In addition, the evidence produced at Trial demonstrated that the Defendant has in the past worked a second job, and that in the future his wife may again be employable. With regards to the Defendant's expenses, it was brought to the Court's attention that just recently the Defendant was capable of paying over Four Hundred dollars ($400.00) per month in child support, for which the Defendant's responsibility has since ended. Thus, with regards to this evidence, it is the position of this Court that the Defendant, although not currently living a lavish lifestyle, is able to afford life's basic amenities.

By comparison, the evidence produced at Trial shows that the Plaintiff, who is single and employed as a bookkeeper, regularly works overtime to make ends meet. Additional evidence presented at the Trial also revealed that the Plaintiff, although she is not legally obligated to do so, helps support her daughter's family. With regards to the Plaintiff's income, it was revealed that after standard deductions, the Plaintiff has a monthly income of just One Thousand Four Hundred Seventy-three and 33/100 dollars ($1,473.33). Along this same line, the Plaintiff related to the Court that the following figures depict her minimum monthly expenses:

| | |
|---|---:|
| Mortgages (first and second) | $ 745.00 |
| Utilities | 235.00 |
| Food | 125.00 |
| Medical and Dental | 20.00 |
| Transportation | 40.00 |
| Entertainment | 25.00 |
| Insurance and Taxes | 215.00 |
| Credit card and Miscellaneous Expenses | 65.00 |
| Total Monthly Expenses | $1,470.00 |

Although the Court finds the above expenses rather low, it is clear that even if such expenses are taken at face value, the Plaintiff has available less than Ten dollars ($10.00) disposable monthly income. Thus, after considering this fact, along with the other evidence presented at the Trial, it can be safely stated that the Plaintiff is struggling to afford life's basic needs.

Accordingly, after evaluating the foregoing findings as they relate to the Defendant's discharge under § 523(a)(15)(B), the Court cannot find that the Defendant has met his burden of establishing that the benefits of a discharge to him would outweigh the detrimental consequences to the Plaintiff. In addition, the Court does not believe that the Defendant's standard of living will notably suffer or fall below that of the Plaintiff if he is required to pay the Parties' marital debt. Accordingly, the Court finds that the Defendant has not established that either of the exceptions noted under § 523(a)(15) are applicable, and thus the Court holds that the marital debt at issue is nondischargeable. In reaching these conclusions, the Court has considered all of the evidence, exhibits and

arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the legal obligation of the Defendant, Douglas Koenig, to the Plaintiff, Barbara Koenig, regarding the second mortgage held at Minster State Bank (Account Number 11–006043–4) be, and is hereby, determined to be a NON-DISCHARGEABLE debt pursuant to 11 U.S.C. § 523(a)(15).